IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JAMES W. SMITH, JR.                    :        CIVIL ACTION
      Plaintiff                  :
                      :        NO. 02-CV-3683
      vs.                        :
                      :        JURY TRIAL DEMANDED
CITY OF PHILADELPHIA; and               :
THOMAS COSTELLO, Commissioner of        :
Philadelphia Prisons; and               :
EARL HATCHER, Deputy Commissioner       :
of Philadelphia Prisons,                :
      Defendants                 :

## FIRST AMENDED COMPLAINT

### Introduction

1.    Count I of this Amended Complaint pleads a cause of action under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C.A. §2601 *et seq.* Count II pleads a cause of action under 42 U.S.C. §1983 to redress retaliation for the exercise of First Amendment rights.

### Jurisdiction and Venue

2.    This Court has jurisdiction over Plaintiff's FMLA cause of action under 29 U.S.C. § 2617, which provides that a private action to redress violation of the FLMA may be brought in any state or federal court of competent jurisdiction.  This Court has jurisdiction over the cause of action arising under 42 U.S.C. §1983 pursuant to 28 U.S.C. §1343 (3) and (4), which confer jurisdiction over actions to redress and prevent the deprivation,

under color of state law, of rights secured by the United States Constitution.  This court also has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §1331, which confers jurisdiction over claims arising under the Constitution and laws of the United States.

      3.   Venue is properly laid in this district since the cause of action arose in this district.

### **Parties**

      4.   Defendant City of Philadelphia ("City") is a local governmental entity engaged in municipal self-government under the laws of the Commonwealth of Pennsylvania, and the Philadelphia Home Rule Charter.

      5.   The Philadelphia Prison System ("PPS") is a subdivision of the  Defendant City of Philadelphia, which is organized as a Departmental Commission, falling under the jurisdiction of the Philadelphia Department of Public Welfare. PPS is responsible for managing the correctional facilities and programs operated by the City of Philadelphia.

      6.   As a county correctional system, PPS houses inmates awaiting trial in Philadelphia, and convicted criminals with sentences of two years or less. PPS operates four major correctional facilities located on State Road in Northeast Philadelphia: the Curran-Fromhold Correctional Facility ("CFCF"); the Detention Center ("DC"); the House of Correction ("HC") and the Philadelphia Industrial Correctional Center ("PICC"); as well as

seven smaller Alternative and Special Detention ("ASD") facilities in various locations in the City.  PICC includes a 250 cell female division and a 400 cell male division.  The other major facilities house only male inmates.

7.    Defendant Thomas J. Costello is, and at all times here material was, the Commissioner of PPS.  As Commissioner Defendant Costello is the Chief Executive Officer of PPS, reporting to the City's Director of Social Services and a seven-member Board of Trustees appointed by the Mayor. He is responsible for the supervision of PPS operations and has final authority with regard to all discretionary management decisions.  He is sued individually and in his official capacity.

8.    Defendant Earl Hatcher is, and at all times here material was, the Deputy Commissioner for Facilities Operations of PPS, in which capacity he is responsible for overseeing operations at the various correctional institutions, subject to the supervision of Defendant Costello.  He is sued individually and in his official capacity.

9.    Plaintiff James W. Smith, Jr. is a Black male, and a former employee of Defendant City of Philadelphia who, at times here material, was employed by PPS as a Correctional Officer ("C/O") and as a Correctional Sergeant.

## Facts

10. Plaintiff began employment with the City of Philadelphia as a PPS C/O on or about June 25, 1995.

11. Throughout his tenure with PPS Plaintiff received fully satisfactory performance ratings, on a rating scale limited to satisfactory and unsatisfactory. In 1996 Plaintiff received a commendation for uncovering a drug operation within the prison.

12. On March 19, 1997, Plaintiff, who was then assigned to ASD, became involved in a verbal confrontation with Julie Carter, a Correctional Sergeant at PICC, while he and another C/O, Marcelino Rivera, were transferring two prisoners from ASD to PICC. Marcelino Rivera responded to the incident by stating to Plaintiff: "I hate y'all niggers" and referring to Plaintiff as "trash".

13. Plaintiff reported the aforesaid incidents involving both Sergeant Carter and C/O Rivera to the prison administration. In support of his grievance against Rivera, Plaintiff solicited other prison personnel to sign a petition confirming that Rivera had, on prior occasions, made racially insensitive remarks to and around other C/Os, and that PPS management was aware of Rivera's conduct and condoned it.

14. On April 1, 1997, Plaintiff met with Elsa Legesse, ASD Warden, Arthur J. Blackmon, Deputy Warden of ASD, and Rivera to discuss the March 19 incident. At this meeting Legesse and Blackmon instructed Plaintiff to cease collecting signatures on his petition and drop the matter.

15.  On April 9, 1997 Plaintiff learned that he was being transferred to PICC.

16.  Plaintiff responded to the transfer to PICC with extreme anxiety because he was concerned that he would be subject to further harassment by Sergeant Carter if he worked at that facility, particularly if he was assigned to work under her supervision, and he believed that PPS management imposed the transfer to retaliate against him for his complaint and petition regarding Rivera's racial remarks.

17.  On April 10, 1997, Plaintiff suffered a panic attack, which was brought on by Plaintiff's supervisor's conduct in deriding Plaintiff's concerns regarding the transfer to PICC. The panic attack involved severe chest constriction, and difficulty breathing, which was followed by vomiting.

18.  As a result of the aforesaid physical symptoms of emotional distress, Plaintiff was transported to Allegheny University Hospital where he was diagnosed with hyperventilation resulting from job related stress.

19.  Plaintiff remained out of work on medical advice through April 17, 1997.

20.  When Plaintiff returned to work on April 18, 1997, he suffered another panic attack, and Helen Vesey, the PSS Occupational Safety Administrator, told Plaintiff that he would not be permitted to return to work until he brought in a note from a psychiatrist.

21.  Plaintiff remained out of work on medical leave for more than a year after leaving the workplace on April 18, 1997.

22.  On June 26, 1998, after exhausting his administrative remedies under Title VII of the Civil Rights Act of 1974, Plaintiff filed a complaint in federal court against the City of Philadelphia, Defendant Costello, and other PPS management personnel, for civil rights violations and related state law tort claims in an action entitled *Smith v. City of Philadelphia et. al*, E.D.Pa. No. 98-CV-3338 ("*Smith I*").

23.  The complaint in *Smith I* alleged that the defendants discriminated against Plaintiff and other Afro-American employees of PPS by condoning Rivera's expression of hostility toward Afro-Americans, and that they retaliated against Plaintiff for complaining about Rivera. It also alleged that defendant's conduct caused Plaintiff to suffer emotional illness, resulting in his inability to work for more than a year.

24.  On or about April 23, 1999, Plaintiff and the City of Philadelphia entered into a settlement agreement with regard to *Smith I*, under which the City agreed to pay Plaintiff and his attorney the sum of twenty-thousand dollars ($20,000.00) as consideration for Plaintiff's agreement to withdraw the litigation and release the City and the other defendants from all claims which were or could have been brought in *Smith I*, and all other claims arising from his employment as of that time, with the exception of Plaintiff's pending claim for workers compensation.

25. After passing the promotional examination for Sergeant, on or about April 5, 1999, Plaintiff was promoted to the position of Correctional Sergeant, assigned to DC.

26. From the time he agreed to the settlement in *Smith I* Plaintiff was subjected to a hostile environment at work because of his protected activity in pursuing that litigation. A group of employees on Plaintiff's shift, including Sergeant Maurice Byrd, harassed Plaintiff by spreading false rumors that Plaintiff had obtained his promotion as part of the settlement of *Smith I*; undermining Plaintiff's authority as a supervisor; and treating Plaintiff with disrespect.

27. Plaintiff complained to his supervisors about this harassment, but they did not do anything to address the problem. Plaintiff's supervisor, Lt. Price, laughed when Sgt. called Plaintiff an obscene name in his presence. Lt. Price also belittled Plaintiff in front of officers and inmates, countermanded his decisions without explaining the reasons, and failed to help when Plaintiff came to him with problems.

28. On or about November 11, 1999, Plaintiff made a formal complaint to Captain Thompson that Sgt. Byrd was subjecting Plaintiff to sexually oriented comments and belittling names, and undermining Plaintiff's attempts to provide supervision to his subordinates.

29. On November 11, 1999, while Plaintiff was meeting with Lt. Harmer regarding problems Plaintiff was having with a

subordinate, Sgt. Byrd intervened and challenged Plaintiff's authority over the subordinate. Plaintiff argued with Byrd until Lt. Harmer told both of them to stop, and Plaintiff and Byrd both left the office.

30.  Byrd then accosted Plaintiff in the hallway, threatened Plaintiff, and pushed Plaintiff. Plaintiff returned to office to complain about Byrd's conduct. As Plaintiff was leaving, Byrd entered and intentionally brushed against Plaintiff's shoulder very hard, and said "Junior, you don't want to fuck with me" in front of Lt. Harmer and Lt. Murtha. Later the same evening, Sgt. Byrd pulled up behind Plaintiff at a gas station and again threatened Plaintiff, using obscene language.

31.  On November 15, 1999 Plaintiff presented a written complaint to Lt. Price regarding Sgt.'s conduct on November 11, 1999, as well as the ongoing harassment and management's failure to take appropriate action in response to his previous complaints.  In this letter, Plaintiff requested a transfer to a different facility.

32.  Lt. Price pressured Plaintiff to write a statement confirming that his conflict with Sgt. Byrd was resolved, and Plaintiff complied.  However, the harassment continued.

33.  On or about November 17, 1999, Plaintiff made a formal complaint to Captain Thompson that he was being subjected to harassment by Lt. Price.

34.  On December 2, 1999, Lt. Harmon issued an Employee Violation Report against Plaintiff with regard to Plaintiff's November 11, 1999 altercations with Sgt. Byrd, which was intended to undermine Plaintiff's complaint of harassment against Sgt. Byrd, and retaliate against Plaintiff for complaining about Lt. Price.

35.  On or about December 9, 1999, Plaintiff made a complaint to the PPS Equal Employment Opportunity ("EEO") Unit alleging that he was being subjected to harassment and discrimination.  Although Plaintiff was interviewed regarding this complaint, no further action was taken, and Plaintiff was never advised of the outcome of the complaint.

36.  On December 13, 1999, Correction Officer Betzaida Albandoz submitted a complaint to Lt. Harmer alleging that Plaintiff had subjected her to sexual harassment on November 2, 1999, by presenting her with a birthday cake in the shape of a penis and testicles.  This allegation was supported by C/O Katrina green and Sgt. Jimmy Tilsner.

37.  C/O Albandoz, C/O Green and Sgt. Tilsner, were among the coworkers who, with Sgt. Byrd, were engaged in harassing Plaintiff, and they made this accusation, knowing it to be untrue, for the purpose of causing Plaintiff to be subjected to unjustified disciplinary action.

38.  PPS management did not process C/O Albandoz's complaint through the PPS EEO system, in accordance with its sexual harassment policies, but seized upon it as a pretext to retaliate

against Plaintiff for his protected activity in litigating *Smith I* and/or submitting his EEO complaint, and complaints to management regarding harassment by his coworkers and supervisors because of his prior protected activity.

39. Defendant Costello, exercising his discretion as Commissioner of PPS, imposed a penalty of a thirty day suspension, effective March 9, 2000 through April 7, 2000, and demotion to the rank of C/O effective April 8, 2000.

40. On April 4, 2000, Plaintiff requested a leave of absence to care for his mother under the FMLA for the period from April 8 through May 28, 2000, which was granted pending medical certification.

41. By Memorandum dated April 10, 2000, Plaintiff was notified that his request for FMLA leave was denied because the medical documentation submitted did not support the request.

42. Plaintiff then requested a personal leave of absence. By letter from Defendant Costello dated May 8, 2000, Plaintiff was advised that this request was denied, and he was required to report for duty on the 3 P.M. to 11 P.M. shift not later than May 18, 2000.

43. On May 15, 2000 Plaintiff was arrested for rape, and PPS Internal Affairs was notified of the arrest.

44. While Plaintiff was incarcerated following his arrest on the rape charge he received a telephone call from PPS

Internal Affairs instructing him to report there before reporting to his work assignment.

45.    On May 17, 2000, Defendant Hatcher circulated a memorandum to all PPS Facility Wardens advising them that Plaintiff was "not permitted to enter any PPS jail unless he has approval to do so from this office or the Commissioner."

46.    On May 17, 2000 Plaintiff submitted a letter to the PPS personnel office requesting personal leave until June 8 because of the death of his grandmother, and his arrest.  This request was denied by letter from Defendant Costello dated May 18, 2000.

47.    On May 18, 2000 Plaintiff reported to PPS Internal Affairs for an interview prior to reporting to his job location, as instructed.

48.    The PPS Internal Affairs interview was so stressful that Plaintiff suffered a panic attack.

49.    Plaintiff notified PPS management that he was sick, and he was going to JFK Hospital for medical treatment.

50.    At JFK Hospital plaintiff was given a note excusing him from work on May 18 and May 19, 2000.  When he returned to work on May 18, 2000 to present his medical excuse he was not permitted to enter the worksite.  Plaintiff met with Defendant Hatcher,  and orally advised Defendant Hatcher that he was requesting medical leave.

51.  At the aforesaid meeting on May 18, 2000, Defendant Hatcher advised Plaintiff that forms for requesting FMLA leave would be mailed to him.  However, the forms were never received.

52.  Plaintiff was treated at the Department of Veteran's Affairs on May 21, May 23 and May 26, 2000, for stress-related illness.  He received medical notes excusing him from work on a day-to-day basis  through May 27, and a May 26, 2000 letter from a psychologist at the Department of Veteran's Affairs stating that he required a leave of absence from work for an undetermined period, until his stress-related condition was relieved.

53.  On May 26, 2000 Plaintiff again attempted to visited the worksite to requires a medical leave of absence and present his documentation.  He was again refused admission, and Defendant Hatcher informed Plaintiff that the appropriate forms would be mailed to him, and again the forms were not received.

54.  On June 2, 2000, Plaintiff again attempted to visit the worksite to submit a request for medical leave, and he was ejected from the parking lot and issued an Employee Violation Report for entering prison grounds without permission.

55.  On or after June 10, 2000, Plaintiff received a letter from Defendant Costello dated June 9, 2000, informing him that he was being separated from employment for failure to return to work on May 18, 2000 as instructed.

56.  Defendant Costello made the decision to terminate Plaintiff's employment, in the exercise of his discretion as PPS

Commissioner, to retaliate against Plaintiff for his protected activity in litigating *Smith I* and/or submitting his EEO complaint, and complaints to management regarding harassment by his coworkers and supervisors because of his prior protected activity.

57. The rape charge was subsequently reduced to aggravated indecent assault, for which Plaintiff was tried and found not guilty.

**COUNT I**
**Against Defendant City of Philadelphia,**
**Costello and Hatcher Under the Family**
**Family and Medical Leave Act**

58. The averments of Paragraphs 1 through 57 are incorporated herein by reference.

59. Defendant City of Philadelphia is an employer subject to the FMLA in that it is a "public agency" as defined by §3(x) of the Fair Labor Standards Act.

60. Defendants Costello and Hatcher are employers subject to the FMLA in that at all times here material they acted "in the interest of" the City of Philadelphia with regard to Plaintiff.

61. Plaintiff was an eligible employee under the FMLA as of May 18, 2000, in that he had been employed by the City of Philadelphia for at least twelve months, and he had worked at least 1,250 hours during the previous twelve month period, and the City of Philadelphia employed more than fifty persons at Plaintiff's worksite or within seventy-five miles of that worksite.

62.   Plaintiff was unable to perform the functions of his job from the time he left the PPS Internal Affairs office on May 18, 2000 through June 9, 2000, because of a serious health condition; that is, disabling emotional illness arising from job-related stress.

63.   Plaintiff notified the City of Philadelphia of his request for FMLA leave on May 18, 2000, by orally advising management of his need for a medical leave of absence because of physical symptoms of job-related stress, and requesting the forms to submit medical documentation.

64.   Under the City of Philadelphia personnel policies implementing the FMLA, Plaintiff's deadline for submitting a medical certification supporting his request for FMLA leave would not  arise until the expiration of fifteen days after Plaintiff received a copy of the required certification form transmitted from the PPS personnel office, which form was never transmitted to Plaintiff.

65.   Plaintiff's May 18, 2000 oral request for medical leave, and his request for FMLA information and forms - especially taken together with Plaintiff's past history of disability because of physical symptoms of emotional illness arising from work-related stress, which was known to PPS management - was sufficient to put PPS management on notice that Plaintiff was attempting to request FMLA leave, and that Plaintiff was potentially eligible for such leave.

66. Defendant City of Philadelphia, through its decision-makers including, but not necessarily limited to, Defendants Costello and Hatcher, wilfully violated Plaintiff's rights under the FMLA by interfering with, restraining and denying Plaintiff the opportunity to apply for FMLA leave during the period Plaintiff was unable to perform his job functions as a result of a serious health conditions commencing May 18, 2000 and continuing through June 9, 2000, and by terminating Plaintiff's employment on June 9, 2000 for failure to return to work when Plaintiff was entitled to FMLA leave.

67. Defendant Hatcher wilfully interfered with Plaintiff's attempt to exercise his right to FMLA leave by preventing Plaintiff from visiting the PPS personnel department to address his request for FMLA leave to the departmental FMLA leave authorizing agent and secure the required medical certification form; promising to mail the necessary form to Plaintiff; and failing to ensure that the medical certification form and FMLA information was mailed to Plaintiff.

68. The aforesaid conduct of Defendant Hatcher was performed with the knowledge and consent of Defendant Costello, or under Defendant Costello's direction.

69. Defendant Costello wilfully violated the FMLA on June 9, 2000, by authorizing the termination of Plaintiff's employment for failure to return to work on May 18, 2000, when he knew, or should have known, that Plaintiff was potentially eligible

for FMLA leave on May 18, 2000, and had been prevented from making application for such leave.

70.    The aforesaid conduct of Defendants Hatcher, Costello and/or other PPS management decision-makers, in preventing Plaintiff from applying for FMLA leave, and terminating Plaintiff's employment, constituted a wilful and intentional violation of the FLSA or was committed in reckless disregard for Plaintiff's rights under the FMLA, giving rise to a claim for liquidated damages.

71.    As a result of the aforesaid conduct, Plaintiff was subjected to wrongful termination of employment and deprived of salary and benefits, in an amount to be established at trial.

WHEREFORE, Plaintiff prays that this Court:

(a)    Order Defendant City of Philadelphia to reinstate Plaintiff in his former position as a Correctional Officer retroactive to June 9, 2000, without loss of seniority or benefits;

(b)    Award Plaintiff a judgment against Defendants City of Philadelphia, Costello and Hatcher, jointly and severally, in the amount determined to be necessary and appropriate to compensation Plaintiff for lost income and benefits from June 9, 2000 to the date of judgment;

(c)    Award Plaintiff a judgment against Defendants City of Philadelphia, Costello and Hatcher, jointly and severally, in the amount determined to be necessary

and appropriate to compensation Plaintiff for lost income and benefits from the date of judgment to the effective date of his reinstatement;

(d)     Award Plaintiff a judgment against Defendants City of Philadelphia, Costello and Hatcher, jointly and severally, for liquidated damages in accordance with the provisions of the FMLA;

(e)     Award Plaintiff his reasonable attorney fees and costs in this litigation; and

(f)     Award Plaintiff such other relief as the Court may deem appropriate.

**COUNT II**
**Against Defendants City of Philadelphia,**
**Costello and Hatcher for Retaliation**
**for the Exercise of First Amendment**
**Rights Under 28 U.S.C. § 1983**

72.    The averments of Paragraphs 1 through 71 are incorporated herein by reference.

73.    Defendants Costello and Hatcher, exercising the powers which they possess by virtue of their status as management decision-makers of PPS are state actors within the meaning of 28 U.S.C. § 1983.

74.    As the final decision maker with regard to personnel action of PPS, Defendant Costello's conduct is attributable to the Defendant City of Philadelphia for purposes of liability under 28 U.S.C. § 1983.

75.   Plaintiff engaged in activity protected under the First and Fourteenth Amendments to the United States constitution from retaliation by state actor in prosecuting his claim in federal court in *Smith I*.

76.   Plaintiff engaged in activity protected under the First and Fourteenth Amendments to the United States constitution from retaliation by state actor in complaining to PPS managers and through the PPS EEO process that he was being subjected to harassment by co-workers and supervisors and subjected to a hostile work environment for prosecuting his claim in federal court in *Smith I*.

77.   The City of Philadelphia has history and practice of retaliating against individuals who exercise their First Amendment rights to assert complaints about civil rights violations which is so permanent and well settled as to rise to the level of a longstanding practice or custom which constitutes the standard operating procedure of the City.

78.   Defendants Costello and Hatcher and/or other PPS management personnel, acting pursuant to the aforesaid practice or custom, spread false rumors regarding Plaintiff, instigated and/or condoned harassment of Plaintiff by co-workers and subordinates, undermined Plaintiff's authority as a supervisor, and signled out Plaintiff for unfair and uncharacteristically harsh disciplinary action, to retaliate against Plaintiff for his protected activity.

79. Although the City has a formal written policy prohibiting sexual harassment, discrimination and retaliation for protected activity, this policy is enforced by a procedural mechanism which is used and abused in practice to deter employees with legitimate grievances from utilizing effective avenues of redress by filing timely complaints with the Equal Employment Opportunity Commission or the Pennsylvania Human Relations Commission; and to facilitate retaliation against the complaining party instead of affording them redress.

80. Defendants Costello, Hatcher and the City of Philadelphia, acting through Defendants Costello, Hatcher and other management personnel, violated Plaintiff's First Amendment rights by subjecting Plaintiff to a hostile work environment from on or about April 23, 1999 through May 18, 2000; demotion Plaintiff and subjecting him to a thirty day suspension on the basis of th pretext that Plaintiff had engaged in sexual harassment of a subordinate; prevented Plaintiff from applying for FMLA leave on and after May 18, 2000, and terminated Plaintiff's employment, to retaliate against Plaintiff for prosecuting his claim in *Smith I* and/or for complaining about the violation of his civil rights.

81. As a result of the aforesaid harassment, retaliatory conduct and hostile work environment, Plaintiff suffered emotional injury including disabling emotional illness arising from job related stress, and loss of income when he was unable to work as a result of that emotional illness.

82.  As a result of his suspension from March 9, 2000 through April 7, 2000; his demotion from the position of sergeant to correction officer effective April 8, 2000, and the termination Plaintiff's employment effective June 9, 2000, Plaintiff lost salary and benefits, in an amount to be established at trial.

83.  The conduct of Defendants Costello and Hatcher, as set forth above, was wilful and malicious, and/or committed in reckless disregard for Plaintiff's constitutional rights, giving rise to a claim for punitive damages.

WHEREFORE, Plaintiff prays that this Court:

(a)  Order Defendant City of Philadelphia to reinstate Plaintiff in his former position as a Correctional Sergeant retroactive to April 8, 2000, without loss of seniority or benefits;

(b)  Award Plaintiff a judgment against Defendants City of Philadelphia, Costello and Hatcher, jointly and severally, in the amount determined to be necessary and appropriate to compensation Plaintiff for lost income and benefits and emotional injury;

(c)  enter judgment against Defendant Costello and Hatcher, jointly and severally, for punitive damages, in an amount sufficient to punish them for their conduct in this matter, and deter them and others from engaging in such conduct in the future;

(d)    Award Plaintiff his reasonable attorney fees and costs in this litigation; and

(e)    Award Plaintiff such other relief as the Court may deem appropriate.

_____
SHARON K. WALLIS
640 Rodman Street
Philadelphia, PA 19147
    (215)923-6170
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I, Sharon K. Wallis, Attorney for Plaintiff, hereby certify that on this 18th day of September, 2002, I caused a true and correct copy of the foregoing Amended Complaint to be served upon counsel for Defendant City of Philadelphia by United States Mail, first class postage prepaid, addressed as follows:

> Daniel L. Garry, Esq.
> City of Phila. Law Department
> One Parkway
> 1515 Arch St.
> Phila. PA 19102-1595

_____
SHARON K. WALLIS
September 18, 2002